Robert W. DUCKETT

v.

William F. STEINER, Warden, Maryland House of Correction.

Civ. No. 14845.

United States District Court
D. Maryland.

Dec. 26, 1963.

---

Robert W. Duckett, pro se.

THOMSEN, Chief Judge.

Robert William Duckett (petitioner) was convicted in November 1961 in the Circuit Court for Charles County of the crime of manslaughter and was sentenced to ten years' imprisonment. One codefendant, his brother James, was convicted of assault. Four other codefendants plead guilty to assault, and one of them, Brooks, called as a witness by the State, testified that he saw petitioner stab the victim, Martinez. Petitioner took no appeal from his conviction, but filed a petition under the Post Conviction Procedure Act, Art. 27, sec. 645A–645J, of the Maryland Code, 1957 ed., in which he claimed deprivation of his rights under the Fourteenth Amendment on a number of grounds, among them that his conviction and sentence were based upon perjured testimony.

After a hearing in which the trial court considered various statements and arguments, but did not take testimony, the petition was denied. The Court of Appeals remanded the case so that testimony could be taken on the controverted question of fact raised by petitioner's contention that perjured testimony had been used. Duckett v. Warden, 230 Md. 621, 185 A.2d 712. All other issues were decided against petitioner.

On remand, a full hearing was held before Chief Judge John B. Gray, of the Seventh Judicial Circuit, at which petitioner, represented by counsel, testified himself and produced six witnesses, all he desired to call. The prosecutor also testified. Judge Gray found "no sufficient showing of perjury at the original trial of this case" and "no scintilla of evidence to show that the State's Attorney was a party to the presentation of perjured testimony, even had there been any". He therefore denied relief. Petitioner filed no application for leave to appeal from that denial, but filed a petition for a writ of habeas corpus in this court, in which he raises the same points that were considered by Judge Gray, namely, that he was denied due process of law because: "I. The prosecuting authorities used testimony known by them to be perjured; II. The records will show, that the State, obtained various statements some of which exonerated, the petitioner; III. The State used testimony by an accomplice who could well have stuck the fatal knife in the victim, since he 'George E. Brooks' was convicted of assault on said victim 'Jose Martinez'."

In ruling on these points, Judge Gray found the following facts:

"While there are general allegations that the judgment in this case was in violation of the Fourteenth Amendment of the United States Constitution, that the conviction was without due process of law, the real meat of the Petitioner's claim is that Robert Duckett was convicted by reason of perjured testimony given by one of the witnesses who testified here today, George E. Brooks; and that this perjury was connived in by representatives of the State, so as to vitiate the trial on the ground of fraud on the part of the duly authorized officers of the State.

"This claim, of course, is laid at the door of the State's Attorney. There isn't any pretense that anybody else in any official position had any part in the testimony of Brooks, except that he did make a statement to the Police on June the 25th, 1961, shortly after his arrest, in which he indicated that the victim had been

cut with a knife by Robert Duckett, that is, the Petitioner in this case, and that also the victim had been stabbed by James Duckett.

"There came a time when, according to the testimony of the State's Attorney, Brooks sent for the State's Attorney and told him that his statement was inaccurate in one respect; that in the statement he said that he saw Jim Duckett stab Martinez, the decedent, whereas that statement was wrong; he didn't see Jim stab Martinez at all, but that the stab wound which apparently caused his death was inflicted by Robert.

"Now, the State's Attorney thereupon investigated this matter and convinced himself that this statement made by Brooks was truthful, and that he had reasons for charging Jim Duckett with the fatal stabbing when the original statement was made, and that in the maze of the contradictory claims of this gang that had beset the decedent, and caused his death, he felt that he should press charges against Robert as being the cause of the decedent's death.

"The case thereupon went to trial, and Brooks testified that he saw Robert stab the victim, and he repeated that testimony here today. Now, that trial was for the purpose of establishing the cause of the victim's death. Of course the State was not bound by the initial statement of Brooks, concerning the stab wound inflicted by Jim Duckett, but was obligated to develop what the real facts in the matter were. And there was offered enough evidence to convince the Jury or the Judge— I don't recall whether it was a jury trial or not—that Robert did inflict the fatal wound. There was testimony, other than that of Brooks, tending to corroborate Brooks' statement, including the statement of the sister of Robert, concerning what he proposed to do about Martinez.

"Now, this parade of witnesses today establishes only that this group of five or six men who had attacked the decedent were trying to save their own necks as best they could. And even if we assume, and I am not convinced that it was a fact, that this group of men conspired to change Brooks' testimony, there is not a scintilla of evidence to show that the State's Attorney was a party to it. And certainly the Court would require very compelling proof to satisfy us that the experienced, conscientious then State's Attorney of Charles County, who is a man of the highest personal integrity, would have been a party to any such conspiracy.

"Now, Robert Duckett knew that in his original statement George Brooks said that Jim Duckett stabbed the decedent. And he had a perfect right at the trial of the case to impeach Brooks' testimony with respect to that statement. We do not have before us a transcript of the testimony in the earlier case, but it was indicated by the State's Attorney that Robert Duckett testified before the Trial Court that George Brooks had changed his testimony from that originally given to the State Police. The trier of the facts in that original trial had the responsibility of determining whether they believed the testimony of George Brooks, and to give it such weight as the facts seemed to require.

"We find no sufficient showing of perjury at the original trial of this case. And, as we have indicated, there is no scintilla of evidence to show that the State's Attorney was a party to the presentation of perjured testimony, even had there been any."

In his petition filed in this court petitioner does not challenge in any way

the fairness of the hearing before Judge Gray. That hearing and the findings made by Judge Gray clearly meet the tests set out in Townsend v. Sain, 372 U.S. 293, at 313, 83 S.Ct. 745, at 757, 9 L.Ed.2d 770, and in the Report of the Committee on Habeas Corpus made to the Judicial Conference of the United States in September 1963. This Court accepts the findings of facts made by Judge Gray, and concludes that it is unnecessary to hold any hearing in this Court, since on the facts found by Judge Gray it is clear that petitioner has not suffered the claimed deprivation of his constitutional rights.

The petition for a writ of habeas corpus is hereby denied.

The Clerk is instructed to mail a copy of this opinion to the petitioner and a copy to the Attorney General of the State of Maryland.